Thank you, we will hear argument now in our second case, number 19-15-98, and Ms. Lewis will hear from you first. Good morning, I'm Stephanie Lewis representing Mr. Owusu, Mr. Kofi Owusu. In this case there is no substantial and probative evidence of marriage because it relies on King's unsubstantiated statement, falsely declared to be against his own interest, unsupported by documentary evidence, and contradicted by direct evidence validating the marriage, including Mr. King's statements himself over a period of 10 years. This case turns on truth and a false or coerced confession. Seventeen years ago, Mr. Owusu's current wife, Addis Mark Adubofor, known as Addis, married Mr. Lyndon King, after which they lived together about six months before they lacked money and were evicted for lacking payment for the rent. After eviction, yes? I'm sorry, I don't want to interrupt, but I want to make sure I understand where you are in your argument. So, are you arguing that there is not substantial evidence to support the finding of marriage fraud by the agency? Is that where we are? Yes, I've made the statement that there is no substantial and probative evidence and that the decision on review is flawed. It's flawed because, go ahead, sorry. No, okay then, so there's not substantial evidence and yes, what are the other flaws? And it's flawed. Then I'm just saying that this turns, this whole case turns on truth, whether we have truth, where we're working for truth, and a false or coerced confession. Okay, with respect to substantial evidence, you know, we sitting here might think, yes, there are some credibility questions about the affidavit, but that's normally we would allow the agency to weigh that, draw the inferences, the agency considered it very clearly in conjunction with other evidence and found that there was grounds to find marriage fraud. And so, I guess, putting to one side, I guess, this is the substantial evidence question in which we do give a lot of deference to how the agency has weighed the evidence. Are there legal flaws with this decision that you want to press here? Yes. Okay, what are they? The agency did not apply the standard of proof required to find marriage fraud. They did not evaluate the statement that King made. They did not evaluate it by the nature, the credibility, or the quality. Then, it did not consider that sole piece of evidence. It did not consider it in the totality of all evidence. Now, when they were asked. So, can I just ask, let me just, are you making, are you raising a due process challenge with respect to the evidence? Yes. Okay, what is that? Mr. Owusu has a statutory right to an approved petition and he was denied due process because he was denied any opportunity to get evidence. He was denied the basis of this statement on which the agency relied. It was like a kite in the sky without any strings tied to it. So, I will stop in one minute, but I really just am trying to get my hands around your claim. So, for purposes of your due process argument, you're arguing here that the protected interest is the property interest that arises from that statutory right to a visa? Yes, he has the right. So, you are not arguing that there is a liberty interest in a right to marry. You argue that in the district court, but you're not arguing that here. Okay, did you raise this due process statutory right to a visa as a protected property interest before the district court? Because the district court did not address that. Okay, where in your summary motion did you raise that? Well, you know, I won't make you, but you were telling me I will find it in your summary judgment papers. It's, even if it, I mean, I believe I did because it's prominent. It's very, very important, but it doesn't eliminate the fact that he does still have a statutory right to the approved petition, and that statutory right gives him the right to procedural due process, and this procedural due process was denied him because, first of all, he had a regulatory right to disclosure of the basis, at least the basis, for the statement that's relied upon by the agency, and that was, the basis of that was the statement of the, I think it's called SOF, the statement of proceedings that came from the investigation. Yes. Counsel, if I could follow up on that point, and I understand your position that you believe the inability to cross while I understand your points, does what you were provided in the way of the notice of intent to deny and the notice of intent to revoke and the statement of Mr. King itself, does, do you agree that that complies with the regulations that exist here, you know, CFR 103.2i? No. How does it not comply with it? If you could explain, please, how what your client received did not comply with the applicable regulation. He was not given even a basis in which he could approach the statement. Essentially, the statement said that a total stranger arranged and paid King to marry August. It was like who, what, when, where, why? There was no basis by which he could even begin to rebut that statement. He filed affidavits and declarations by people who had knowledge of what was going on, but those statements, that declaration and that direct evidence was dismissed as biased, incomplete, unrelated. And so no, he was not given due process. And further, he was entitled, he was entitled to the full disclosure of the investigation. If it was in fact going to be a part, a reason, or a basis for finding that there was marriage fraud. Now, had he been, had he had this disclosure occurred and he had seen this statement of findings, you would have seen that the whole argument that King never lived, lived at home in Timber Lane wouldn't have flown. The investigators found that his mother said, yes, she knew he was married to August and he didn't, she didn't know where he lived, but she knew he didn't live there. And now we have the mother contradicting even the decision. We have evidence that the Addis file was sent to ICE on that fraud marriage investigation. They sent it there in 2009, I think, or 2008. And it was there until 2012 and ICE said, no fraud and returned it to USCIS, which then immediately in 2013, opened a arguably illegal investigation with their NS, ND, excuse me, DFNS subdivision of USCIS. And that investigation was done in total secrecy. There was no, no knowledge. It was totally undisclosed during the whole proceeding that this was going on. And neither Addis nor her, neither Mr. Owusu nor his attorney received any notice that they were going to investigate Mr. King. There was no opportunity for him then afterward to call any evidence, personal evidence, witnesses, no opportunity to subpoena the people who actually took the, the statement. We don't know. We have no idea what happened. We don't know the circumstances of the case. We don't even know what Mr. King's intent was or what his interests could have been. Can I ask you a question about Mr. King and his affidavit, which you did have? So the government argues in part that putting the responsibility on the government to make Mr. King available for cross-examination wouldn't really do much to reduce the risk of error in a case like this because your client and his spouse, they knew of Mr. King's admission and they had access to him. He had a perfectly amicable relationship with his ex-wife. They could have gone back to him and gotten their own affidavit or statement if there was anything to clear up. So what's your response to that? All I know is that Mr. Owusu hired an investigator to try to locate and speak with Mr. King. Now when that occurred and whether or not that was answering directly to the period of time between 2015 when the notice of intent was issued and 2015, the notice of intent was issued that included the statement by Mr. King and that same year in 2015, the decision was made in September. So sometime during that period, or at least in 2015, there was an investigation to try to find Mr. King. Thank you. Mr. King was arrested for a series of offenses after they were evicted. In 2015, 2004, 2005, 2006. And in 2006, he was convicted and sentenced for two years. That brings us up to 2008. In 2008, Mr. King declared unequivocally his marriage to Otis was not simply to obtain benefits. He wrote, I really love that girl. And he wanted a second chance. But in 2009, Otis filed for divorce, married Mr. Owusu. And that same year, the district director denied Mr. King's previously approved petition based on marriage fraud and the automatic termination with divorce. Subsequently, the district attorney denied Mr. Owusu's petition. On the same, on the same circumstantial evidence that was used to revoke King's previously approved petition. Mr. Owusu appealed and a BIA three-member panel found that there was no substantial and probative evidence of marriage fraud and approved Mr. Owusu's petition. Thank you, counsel. Your time has expired, but I believe, yes, we will hear from you on rebuttal. Thank you very much. Mr. Bargan, is that right? Bargan, but thank you, Your Honor. All right. I tried. No, please. Good morning, Your Honors, and may it please the court. Dennis Bargan on behalf of the government, defendant Apollese in this appeal. During extensive administrative proceedings dictated by the governing regulations on several different occasions, United States Citizenship and Immigration Services explained its proposed reasoning, detailed the evidentiary materials on which that reasoning was premised, provided a copy of the most important documentary evidence, that being Mr. King's 2014 sworn declaration, and allowed Mr. Owusu an opportunity to submit whatever evidence and accompanied argument he desired in support of his alien relative petition. And after USCIS was not persuaded by his argument and his evidence, Mr. Owusu was then able to obtain on several occasions independent de novo review of USCIS's conclusions at the Board of Immigration Appeals. This court has repeatedly held that the Article 3 courts review such BIA determinations under an extremely deferential standard. In its detailed opinion, the district court correctly concluded that Mr. Owusu could not pass this significant hurdle and that his arguments improperly asked the district court to reweigh the evidence before both administrative adjudicators. This court should therefore, yes, your honor. Oh, I'm sorry, counsel. I just want to bring you back to the district court opinion for a minute. Sure. So the district court opinion in dealing with the due process argument assumed without deciding that there was a protected liberty interest in marriage. The petitioner is not advancing that protected interest on appeal. You argue that the petitioner did not advance before the district court the alternative protected interest that he is advancing now, that's the property interest protected by this mandatory statute. If you're right on that, isn't that the end of the due process claim altogether? It is indeed, your honor. And if we are right and the petitioner, excuse me, the appellate here is disclaiming any interest in the more generalized property slash liberty interest analysis that he articulated in the district court, then yes, that is the end of the story. We don't believe that even if it isn't the end of the story, that we don't prevail. Yeah, I understand that, but just we have to figure out how much work we're supposed to do in this case. So I just want to bear down for a second on whether this statutory interest was properly preserved. And I did find sort of there is an allusion to it in the opposition to the defendant's motion for summary judgment. It sort of, it pops up in the, on page 173 in the heading, but then the text is almost exclusively about the right to marry under loving. And I'm just trying to figure out whether this was enough to put the district court on notice. Like, hey, we've got this, it's not just the loving right we're talking about, we're also talking about a statutory protected interest. What do you think? I don't believe that it does, Your Honor. You know, similar to this court's repeated holdings that arguments that are advanced in cursory fashion are not preserved for appellate review. Similarly, an argument that appears only vaguely in a section heading, but that the more detailed analysis under that heading doesn't include that argument, we would say is waived. And I will say that the appellate in the district court primarily, if not exclusively, relied on his belief that cases such as loving and the Supreme Court's more recent jurisprudence on the constitutional interests of marriage were the gravamen or the situs of his property slash liberty interests under the new process clause. I mean, one of the reasons I'm asking about this is I know you don't even want us to rule on whether there's a protected interest because you're confident that you win on the, you know, was enough process provided in this case in any event. But I will say, I guess let me just sort of present you what I would think of as the strongest argument for a right to cross-examine in a case like this. You know, for one thing, we know that the King affidavit is pretty pivotal. Pivotal in this case because pre-affidavit, the BIA reversed and said these inconsistencies aren't enough. They don't constitute substantial evidence of marriage fraud. So it's not like the King affidavit isn't doing a lot of work here. And then we do know that there's been a change in his position over time. So there's, you know, on its face, there's a credibility question. Was he telling the truth the first time or the second time? And in circumstances like that, it's certainly not, you know, you wouldn't have to be crazy to think due process would require that you get a chance to ask this guy some questions. So, Your Honor, I would say a number of things to Your Honor's question. And the first is, to your last point, that there is a credibility issue here and that reasonable people might believe that cross-examination would assist in that, in developing that credibility determination. I would first argue that there is a significant difference between a policy interest that may further getting at credibility issues and what the due process clause requires as a matter of the federal constitution. Secondly, I would address Your Honors, or I would point Your Honors to the Supreme Court's, albeit fractured, analysis in Din, which if one treats Justice Kennedy's concurrence as the least or least credible one's perspective, the amount of opportunities that Mr. Owusu had pursuant to the regulations to call Mr. King's 2014 sworn statement into doubt, more than satisfies whatever due process is required as a matter of the constitution. Yes, Your Honor. So, tell me, this is my last question, sorry. You know, it seemed to me that the concurring opinion in Din was, there are two prongs of the due process analysis, right? There's notice and then there's the hearing. And I thought the only issue in Din was, is the notice sufficient? But that Din did not go on to consider, like, what kind of a process do you get at your hearing? I thought, and we have clearly said in our case law, those are two separate questions, two separate analyses under the due process clause. So I don't see Din really speaking to notice procedures, opportunity to be heard. I'm sorry, the opportunity to be heard, the hearing prong. It seemed to me that it was all about notice. And I totally agree with you that the notice in this case was clearly sufficient under Din. But I think that's a separate question. I would disagree with Your Honor respectfully on that. Because if it were the case that even if the notice is sufficient, there still has to be an opportunity to be heard at the back end of that notice in order for due process to be present. So it is difficult to read Justice Kennedy's opinion as saying, well, the notice is fine, but I'm not even going to address what the opportunity to be heard is. If what Justice Kennedy says is that what the due process requires is only some mere articulable basis consistent with Mandel as to why the State Department has denied this alien petition or this immigrant visa petition, then that has to be all that the due process clause requires as both a matter of notice and an opportunity to be heard. Okay. Counsel, can I ask on that? If Din, I mean, Din is applying Mandel. And if we look back at the Fiolo versus Bell decision from the 70s, right, it's an I-30 challenge. I mean, it's the same basic challenge. And the court in Fiolo applies Mandel to the question about illegitimate paternity. But whatever the question is, it seems like Fiolo tells us, if we get there, I don't I'm not at all sure we get to all of this, but that that directs us in accordance with Justice Kennedy's concurrence that as long as there's a bona fide and legitimate reason given that we're done. We don't probe and test the justifications for the procedure. I apologize, Your Honor. I didn't want to cut you off. No, please. No, I do agree with you, Your Honor, that Justice Kennedy's concurrence in Din is consistent with what the Supreme Court held in both Mandel and then more recently than Mandel in Fiolo. And that's consistent with the argument I am trying, perhaps inartfully, to articulate here. But to go back to your question, Judge Harris, even if the even if Din does not itself on its own end this due process inquiry, I think it is important to look at this record to see how many opportunities that Mr. Owusu had to challenge Mr. King's 2014 statement in many of the ways that cross-examination might have. And that is on five separate occasions, he had the ability to articulate what questions he would have asked Mr. King on cross-examination and put a different way what gaps there are in the bald, not bald, but the more just written declaration. And that those gaps themselves called the credibility of that 2014 statement into question. And Mr. Owusu did this on numerous occasions. And the BIA simply rejected them saying those credibility concerns that you are raising, such as why was the interview taken at a restaurant? Why wasn't it at USCIS headquarters? Those sorts of things do not move us as to whether or not that statement is credible. To put it a different way, even if Mr. Owusu had answered those questions in a way adverse to USCIS's conclusions, then it would not have moved the needle of credibility and substantial and probative evidence of marriage fraud. Yes, Your Honor. So on the cross-examination question, I just want to, what exactly do you want us to hold? Is it that due process never would require cross-examination of an affidavit like this of an ex-spouse admitting to fraud? What the BIA held on the due process question was that there's no due process violation in considering that affidavit without cross-examination and in to a case where the affidavit is not the only evidence. And that sort of brings it in line with where I think the Ninth Circuit ended up, as you point out, in sort of limiting its precedent on this requiring cross-examination to cases where that's the only evidence. So how broad a holding are you looking for from us on this right to cross-examination? Your Honor, I think that this court can address the due process question here in one of two ways. I think it can say consistent with our position about the meaning of DIN that the mere procedures and multiple opportunities to be heard and to provide evidence satisfies due process full stop. But even if this court were not convinced of that position, I think that our position is that cross-examination is not necessary across the board because of those opportunities that he has. To put it a different way, even if DIN itself doesn't solve the problem, an application of the Matthews tripartite framework to the alien relative petition process would yield the conclusion that it is not necessary as a matter of due process for cross-examination. But even if this court were not persuaded by that holding, I think that we succeed on the due process point here because this record reveals, as Your Honor articulated, that this was not the only evidence of marriage fraud to which USCIS and BIA pointed during analysis. Yeah, I guess I'm only asking because I think the next to the last one you offered that under Matthews versus Eldridge cross-examination is never required, we'd be affirming a holding the BIA didn't make. The BIA only said there's no due process violation in considering this affidavit without cross-examination and in conjunction with all the other evidence. But I mean, this might be semantic and nitpicking, I was just curious. No, and yes, Your Honor. One issue, and in the I think reply brief of the appellant, there's a reference to the allowance of cross-examination in New York cases, but not other cases. I got two questions, I'll do them in reverse order. If that issue was properly raised below, and it does not look like it was, but I want to hear from you on that. But if that issue was raised below, is it, even if there's substantial evidence, is that, is being allowed cross-examination in New York and not in other jurisdictions arbitrary and capricious? I would say the answer is no, Your Honor, given the circumstances under which those procedures occur. As Your Honor rightly notes, this was not raised in the motion to add those papers to the joint appendix in this case as a supplementation under Federal Rule 10. But more to Your Honor's substantive point, I don't believe it would be arbitrary and capricious, especially given the way in which those procedures came about. They are the result of a long-standing consent decree from the Southern District of New York in the late 1970s, I believe. And as a result, the fact that that district office is required as a part of a consent decree to go forward with such cross-examination does not itself make the fact that the regulations do not provide for such cross-examination across the board arbitrary and capricious. Your Honors, unless there is any further questions, I'm happy to cede the rest of my time and I thank the Court for its time this morning. Thank you. Ms. Lewis, you have some rebuttal time? Yes, thank you. One, even in the Immigration Court, the issue was raised on due process and it was the case of Singh v. Mayotas was specifically specified by the prior attorney in those proceedings and argued that there was a right to cross-examination. That same right, that same process that was articulated in that case, Maracas case, was that the petitioner had a statutory right to the approved petition and therefore had procedural due process. So that was clearly established early on. Whether or not it was discussed by the District Court, I defer to whatever you find there, it certainly was in behind the whole concept. The reason it was not emphasized, the marital part, we recognize that is still up in the air to a certain extent, the marital right to due process. With respect to the standard, the standard here at the Fourth Circuit articulated is to find out whether or not the agency's decision was accurate. We are saying that you cannot look at that unless you apply the standard that was articulated in the matter of Singh. The matter of Singh standard includes the procedure that is required before you make a determination of marriage fraud. That procedure includes specifically the evaluation with respect to nature, credibility, and basically the quality. If you look at the only direct evidence, and I'll say that this is similar to a case in which you have no other evidence, because the BIA already said that the circumstantial evidence was not statutory and probative of marriage fraud. Therefore, in order for this case to have statutory and probative fraud, the statement had to be credible. Otherwise, there was no statutory and probative fraud. So in this case, it's just like you're saying there is no other evidence, and it depends on credibility. We also know that on the USCIS website, they state that yes, there is the difference in New York, and they found that the additional procedures to increase the credibility of a statement enhanced their proceedings, and it was efficient. It's going on continuously in New York right now. There is no reason why that cannot be also occurring in the Fourth Circuit, because it's a false or coerced confession. No family should be destroyed on the grounds of a false or coerced confession. Now, whether or not it was brought up in the district court or not, it doesn't alter the fact that the agency's decision failed to validate the statement upon which they totally rely to find statutory, I mean, circumstantial and probative evidence of fraud. And not only that, it has to be more than probably true. So even if you say, well, we're going to assume that they knew his interests, and that somehow this was going to be against his interests, even to make that assumption, you're saying, well, it's probably true. That's not the measure. The measure has to be much higher, because the BI said, look, this is such a damnable accusation that these people can never have another petition. It's the next step to being removed, removed from a family of three children. That's a terrible assumption to make, that a declaration that's been contradicted not only by others, but by himself, is more than just an assumption that it's correct. Counselor, your time is up. If you want to just wrap up for us. Yes. Mr. Osawusu has a statutory right to an approved petition. We are here to ask for fundamental fairness. A false or coerced confession should never be the grounds to destroy a family. There is no means by which the agency was able to validate the truth of the alleged confession. We don't know what inducements were made. We don't know what was in Mr. Osawusu's or Mr. King's mind at the time. Consequently, we can't even know what his interests are. Counsel, thank you so much. Thank you. This is normally the part where we would come down and shake hands with counsel and express personally our gratitude for your assistance today. Today we will do it remotely, but we are very grateful that you were here and could help us with this case. We will take a very short recess while we get the new lawyers into place. Thank you. The Honorable Court will take a brief recess.
judges: Pamela A. Harris, Julius N. Richardson, A. Marvin Quattlebaum Jr.